# STATE v. HOWARD H. HAYES.

195 N. W. 2d 555.

March 10, 1972—No. 41376.

*C. Paul Jones,* State Public Defender, and *Earl P. Gray* and *Mollie G. Raskind,* Assistant State Public Defenders, for appellant.

*Warren Spannaus,* Attorney General, *Paul J. Tschida,* Special Assistant Attorney General, *William B. Randall,* County Attorney, and *Steven C. DeCoster,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Murphy, Otis, and Peterson, JJ.

MURPHY, JUSTICE.

Appeal from a judgment of conviction on a charge of aggravated robbery contrary to Minn. St. 609.245. It is urged that

defendant was denied due process of law by identification testimony which was allegedly tainted by his appearance without counsel at a lineup that was arranged in an unfair and prejudicial manner. It is also contended that the verdict is not supported by the record.

From an examination of the record, it fairly appears that the jury could find that, on September 8, 1967, defendant entered Kamp Food Market in St. Paul. The principal prosecution witness, Mrs. Stella Kamp, was in charge of the premises. A small boy, who had just purchased candy, was hurried away by defendant. Defendant then drew a gun and instructed Mrs. Kamp to open the cash register, saying, "Not a loud noise out of you or I'll blow your brains out." Mrs. Kamp was forced to give him money from the cash register, which amounted to about $65 and included two or three $20 bills. Defendant walked out of the store and ran a block down the street where he entered the passenger side of a moving black station wagon. He was also observed by another witness, Mrs. Louise Carney, who operated a small grocery store nearby. She testified that there were two other men in the station wagon but that she was not able to identify them. She noted, as did Mrs. Kamp, that defendant was wearing a white shirt and light brown trousers.

After watching defendant get into the car, Mrs. Kamp called the police, immediately after which two motorcycle policemen and a police car arrived. She gave them the description of the man who had robbed her store, and with directions from two young boys who indicated the general direction in which the automobile had gone, they apprehended defendant and the two other men in the car at a point about 15 or 16 blocks from the Kamp market. Defendant was found to be wearing a white shirt and light brown or tan trousers. A search disclosed a loaded .22-caliber pistol in his possession. He was taken to police headquarters where a further search revealed $60 in cash and some change in his front pants pocket and $27 in currency in his billfold.

Within an hour after the robbery, Mrs. Kamp and Mrs. Carney

were called to the police station where they viewed three men in a lineup, one of whom was defendant. They identified him as the robber. In addition to defendant, the lineup included two younger men who did not closely resemble him. At trial, both Mrs. Kamp and Mrs. Carney made positive in-court identification of defendant as the man in the white shirt and brown pants whom they had seen from their respective vantage points on the day of the robbery. Immediately prior to her courtroom identification of defendant, Mrs. Kamp was questioned by defense counsel for the purpose of laying a foundation for an objection:

"Q. (By Mr. Markert) Mrs. Kamp, is your recognition of someone in this court today based in any way upon the result of your having viewed that party in the police department, after this robbery took place at your store?

"A. I don't know if I understand the question right. Would you repeat it again, please?

"Q. Yes. I'll rephrase it. If you identify someone in court today as the man who was in the store, would you be helped in that identification by having seen that man at the police station following the robbery?

"A. No. I know I would be able to identify him any time.

"Q. You would be able to identify him without having seen anyone at the police department.

"A. Yes, I would.

"Q. All right. No further questions."

At trial, defense counsel did not object to the lineup but apparently chose rather to argue that its results were unreliable. It is now contended that the lineup was illegal because (1) it was unfair since defendant was significantly older than, and otherwise did not look like, the other two men in the lineup; and because (2) defendant was not represented by counsel at the lineup and had not waived his right to such legal assistance. It is urged that the alleged illegality was so prejudicial that the subsequent in-court identification of defendant should have been excluded.

Defendant relies upon United States v. Wade, 388 U. S. 218,

87 S. Ct. 1926; 18 L. ed. 2d 1149 (1967), in support of the claimed prejudicial effect of the lineup. The thrust of that case is to protect the accused from prejudice which might result from contrived identification by prospective witnesses as a result of improper lineup procedures. It was held there that the lineup is a "critical stage" of the prosecution at which the defendant is as much entitled to the aid of counsel as at trial itself; that both defendant and his counsel are entitled to notice of the proposed lineup; and that the presence of counsel is a requisite condition of such lineup in the absence of an intelligent waiver. See, also, Foster v. California, 394 U. S. 440, 89 S. Ct. 1127, 22 L. ed. 2d 402 (1969); Stovall v. Denno, 388 U. S. 293, 87 S. Ct. 1967, 18 L. ed. 2d 1199 (1967); State v. Bishop, 289 Minn. 188, 183 N. W. 2d 536 (1971). Defendant further calls attention to State v. Olson, 279 Minn. 166, 156 N. W. 2d 89 (1968), and State v. Gluff, 285 Minn. 148, 172 N. W. 2d 63 (1969), where this court reversed judgments of conviction, even though no objection was made to improper testimony regarding a prior offense in Olson or to an allegedly prejudicial lineup in Gluff. However, we have considered the application of United States v. Wade, *supra,* and Gilbert v. California, 388 U. S. 263, 87 S. Ct. 1951, 18 L. ed. 2d 1178 (1967), with reference to the propriety of in-court identification testimony by a witness following a pretrial lineup identification, and we have held that the defendant's rights are not violated by the introduction of such evidence at trial where it appears that such in-court identification is wholly independent of any prior allegedly irregular confrontation. Broberg v. State, 287 Minn. 66, 176 N. W. 2d 904, certiorari denied, 400 U. S. 843, 91 S. Ct. 87, 27 L. ed. 2d 79 (1970); In re Welfare of Spencer, 288 Minn. 119, 179 N. W. 2d 95 (1970); State v. Burgess, 290 Minn. 480, 185 N. W. 2d 537 (1971); State v. Stark, 288 Minn. 286, 179 N. W. 2d 597 (1970). See, also, Searles v. State of Minnesota, 428 F. 2d 1188 (8 Cir. 1970); State v. Kohuth, 287 Minn. 520, 176 N. W. 2d 872 (1970); Simberg v. State, 288 Minn. 175, 179 N. W. 2d 141 (1970).

The principle expressed in Wade and Stovall, to the effect that the pretrial confrontation is a "critical stage" of the prosecution requiring the presence of counsel unless waived, must be applied in light of the well-recognized qualification that whether or not there is a violation of due process in the conduct of a confrontation depends upon the totality of the surrounding circumstances. Stovall v. Denno, *supra;* Coleman v. Alabama, 399 U. S. 1, 90 S. Ct. 1999, 26 L. ed. 2d 387 (1970); Simmons v. United States, 390 U. S. 377, 88 S. Ct. 967, 19 L. ed. 2d 1247 (1968); Foster v. California, *supra.*

It may be fairly said that these authorities do not go so far as to hold that identification testimony is proscribed by constitutional standards in every case where the defendant has appeared at a pretrial lineup without benefit of counsel. The applicable test is whether, under the totality of circumstances, the lineup has been so suggestive that the witness' later in-court identification is irreparably tainted. We are of the view that the case before us is controlled by Broberg v. State, *supra,* where we held that there was a sufficient showing that defendant's identification was not dependent upon what transpired at the lineup to support the conviction. We said there (287 Minn. 72, 176 N. W. 2d 908) :

"* * * [E]ven if we were to conclude that the lineup was tainted, we could not reverse the conviction since the record clearly and convincingly establishes that the in-court identifications had an independent source and were not the product of the lineup. * * *

"* * * [A]lthough the lineup may have fallen short of the ideal, it was not so ' "impermissibly suggestive" as to give rise to any serious likelihood of misidentification or to result in a denial of due process.' State v. Burch, 284 Minn. 300, 314, 170 N. W. (2d) 543, 553."

See, also, State v. McConoughey, 282 Minn. 161, 163 N. W. 2d 568 (1968).

If we evaluate the claim of prejudicial identification procedures in light of the circumstances surrounding the identification of defendant in the case before us, we are persuaded that the identification at the police station was not so prejudicial as to fatally impair the fairness and integrity of Mrs. Kamp's in-court identification. It would appear that her identification of defendant in court was independent of any influence or impression gained at the lineup event. She had ample opportunity to observe defendant closely and to note his dress and appearance immediately prior to and during the commission of the crime. The fact that, at the request of the police, she appeared at the station within an hour after the crime had been committed to confirm that they had arrested the right man should not prevent the state from using her testimony which was, both in character and substance, independent of and not influenced by that incident.

This case is unlike State v. Gluff, *supra,* where it was persuasively argued that a lineup identification may not be used to buttress an otherwise weak recollection. The record here satisfactorily shows that the witness' identification did not depend upon anything that occurred during the lineup procedure.

Defendant's contention that the verdict is not supported by the record is without merit and does not require discussion.

Affirmed.

MR. JUSTICE TODD, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.