STATE of Minnesota, Respondent,

v.

Ronald James BELL, Appellant.

No. A04–1595.

Court of Appeals of Minnesota.

Sept. 20, 2005.

Mike Hatch, Attorney General, and Susan Gaertner, Ramsey County Attorney, St. Paul, MN, for respondent.

John M. Stuart, State Public Defender, Suzanne M. Senecal–Hill, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by KLAPHAKE, Presiding Judge, TOUSSAINT, Chief Judge, and FORSBERG, Judge.*

## OPINION

TOUSSAINT, Chief Judge.

Appellant Ronald James Bell challenges his convictions of first-degree burglary, in violation of Minn.Stat. § 609.582, subd. 1(c) (2002), and violation of a domestic-abuse

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI § 10.

no-contact order, in violation of Minn.Stat. § 518B.01, subd. 22 (2002), arguing that the district court erred in admitting under Minn.Stat. § 634.20 (2002), evidence of two prior incidents in which appellant violated an order for protection involving the same victim. We conclude that the district court abused its discretion by not addressing whether the probative value of the evidence outweighed the danger of unfair prejudice; however, the decision was not reversible error because had the district court conducted the balancing test, the evidence would have been admissible, and it is not reasonably possible that the evidence substantially affected the verdict. We affirm.

## FACTS

Appellant and D.N. had known each other for approximately 20 years, and lived together until their dating relationship ended. On May 21, 2002, D.N. obtained an order for protection (OFP) that prevented appellant from contacting her and from entering her residence.

On May 21, 2003, while in bed with her then-boyfriend, D.N. heard appellant run up the stairs toward her bedroom and yell, "B——h, I'm going to kill you now." Appellant approached D.N., pointed a gun at her, and D.N. shielded her face with her arm as appellant hit her on her head and elbow with the gun. Appellant fled with several of D.N.'s belongings, and D.N. immediately called 911. When the police officers arrived, D.N. was hysterical. The officers took photos of her injuries and found in her bed several pieces that had broken off a gun. The original OFP from May 21, 2002, had expired, but on May 6, 2003, a no-contact order was entered in a criminal case against appellant that prevented him from contacting D.N. and from entering her residence.

On June 9, 2003, appellant was arrested in Chicago and extradited to Minnesota in November 2003. Prior to trial, the district court granted the state's motion to present under Minn.Stat. § 634.20 (2002), evidence of two prior incidents of violation of an order for protection committed by appellant against D.N. The district court excluded two other instances of similar conduct.

The first of the two incidents allowed by the district court occurred on November 17, 2002. Appellant threw a ladder through a window in D.N.'s residence and repeatedly rammed his truck against garbage cans and her house. D.N. called the police, and appellant was arrested. Appellant was charged and pleaded guilty to violation of the OFP. The second incident occurred on March 28, 2003. D.N. arrived home to find appellant in her bed and called the police. Appellant was arrested and, again, pleaded guilty to violation of the OFP. On May 6, 2003, appellant was sentenced, and a no-contact order was issued.

D.N.'s cousins, K.L. and A.L., who were in the house during the May 21, 2003 incident, testified at appellant's trial. K.L. testified that she awoke to the sound of someone running up the stairs and D.N.'s voice saying, "Ronnie, what are you doing in here?" She heard appellant respond, "B——h, you're in here with another n—— r, and I will kill you." Unable to open D.N.'s bedroom door because it was latched from the inside, K.L. woke A.L. after she was able to see appellant moving towards D.N. A.L. testified that he was awakened by K.L. who said, "Ronnie's in the house. He's not supposed to be in the house. I heard Ronnie." He then heard appellant's voice telling D.N. to "[g]et your f——g a—out of bed." When A.L. heard people running down the stairs, he got dressed and ran outside to see appellant running away wearing a jogging suit that

he had seen him in three days earlier. A jury found appellant guilty of first-degree burglary and violation of the no-contact order and not guilty of first-degree aggravated robbery. The district court sentenced appellant to the presumptive sentence of 68 months in prison.

## ISSUE

Did the district court abuse its discretion in admitting under Minn.Stat. § 634.20 (2002), evidence of two prior incidents in which appellant violated an order for protection involving the same victim?

## ANALYSIS

■■■ Appellant claims that the district court abused its discretion by admitting evidence of two previous violations of an order for protection involving the same victim because the evidence was unnecessary and its prejudicial effect outweighed any probative value. The reviewing court will not reverse the district court's admission of evidence of other crimes or prior bad acts unless the district court abused its discretion. *State v. Waino*, 611 N.W.2d 575, 578 (Minn.App.2000). "A defendant who claims that the trial court erred in admitting evidence bears the burden of showing the error and any resulting prejudice." *State v. Grayson*, 546 N.W.2d 731, 736 (Minn.1996). This court must find actual prejudice in order to reverse the district court. *State v. Schulz*, 691 N.W.2d 474, 477 (Minn.2005).

■■■ Generally, "[e]vidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith[,]" but such evidence may be admissible if proven by clear and convincing evidence to show

"motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Minn. R. Evid. 404(b). Minn.Stat. § 634.20 (2002), provides alternative authority in addition to rule 404(b), to admit prior domestic-abuse evidence:

> Evidence of similar conduct by the accused against the victim of domestic abuse ... is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The rationale for the admissibility of such evidence is to show the "strained relationship" of the parties and is relevant to establishing motive and intent. *State v. Copeland*, 656 N.W.2d 599, 602 (Minn.App. 2003), *review denied* (Minn. Apr. 29, 2003). Recently, the Minnesota Supreme Court stated that evidence presented under this statute need not meet the heightened standard of clear and convincing evidence required for the admission of character or *Spreigl* evidence, but need only be more probative than prejudicial. *State v. McCoy*, 682 N.W.2d 153, 159 (Minn.2004). "[T]he admissibility of evidence under Minn.Stat. 634.20 depends only on (1) whether the offered evidence is evidence of similar conduct; and (2) whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *Id.* at 158.

Appellant asserts that the prior conduct offered is not similar because the crimes he was charged with were not domestic-abuse crimes but, rather, were first-degree burglary and first-degree aggravated robbery.[1] Appellant's argument is flawed.

---

1. Appellant was also charged with the misdemeanor offense of violating a no-contact or-  der.

Under Minn.Stat. § 634.20, "[e]vidence of similar conduct by the accused against the victim of domestic abuse ... is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice.... 'Domestic abuse' ... [has] the meaning[ ] given under section 518B.01, subdivision 2." Domestic abuse is defined in Minn.Stat. § 518B.01, subd. 2(a)(1) (2002), as "physical harm, bodily injury, or *assault*" committed against a family or household member by a family or household member. (Emphasis added.) Under the domestic-abuse act, family or household members include persons who are presently residing together or who have resided together in the past. Minn.Stat. 518B.01, subd. 2(b)(4) (2002).

Appellant was charged with first-degree burglary, in violation of Minn.Stat. § 609.582, subd. 1(c) (2002), which states that "[w]hoever enters a building without consent and with intent to commit a crime, or enters a building without consent and commits a crime while in the building ... [and] *assaults* a person within the building" commits burglary in the first degree. (Emphasis added.) The evidence to prove the current offense involves similar conduct. Appellant assaulted D.N. when he entered her home, and the assault is considered domestic abuse because appellant and D.N. were previously involved in a significant relationship and had lived together.

■ Appellant also argues that the district court committed reversible error because the evidence of prior conduct was unnecessary and the district court did not explicitly determine whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. The Minnesota Supreme Court has "on numerous occasions recognized the inherent [probative] value of evidence of past acts of violence committed by the same

defendant against the same victim." *State v. Williams*, 593 N.W.2d 227, 236 (Minn. 1999); *see also State v. Henriksen*, 522 N.W.2d 928, 929 (Minn.1994) ("Evidence bearing on the defendants relationship with the victim ... is often admitted in terroristic threats and domestic abuse cases. Such evidence puts the alleged criminal conduct of the defendant in context, may help the jury in assessing the defendants intent and motivation, and may serve other valid purposes.") Such evidence is inherently probative, but the district court must still weigh the probative value of the evidence against the danger of unfair prejudice.

Here, the district court determined that two of the four offered incidents of similar conduct were more prejudicial than probative and denied the states motion to admit that evidence, but the record does not reflect that the district court weighed the probative value of this evidence against the danger of unfair prejudice. Appellant contends that the probative value of the admitted prior-conduct evidence was substantially outweighed by the danger of unfair prejudice because the state's case was strong without the evidence, the evidence was cumulative, and the district court did not instruct the jury on how to use the evidence immediately before or after the evidence was admitted.

*Strength of the State's Case*

Appellant asserts that prior-acts evidence is usually admitted only if it is needed, and, here, because the state provided the jury with a complete picture without the evidence, it was not needed to strengthen the state's case. Normally a determination of whether the probative value outweighs the prejudicial effect would take into account the other evidence presented and the need for that testimony. *See, e.g., State v. Kennedy*, 585 N.W.2d 385, 391–92 (Minn.1998) (noting that

*Spreigl* evidence may be admitted only if the other evidence is weak or inadequate and the district court should make that assessment after the state has presented all of its non-*Spreigl* evidence). But this is not *Spreigl* evidence. It is relationship evidence under Minn.Stat. 634.20, which does not require this determination. In *McCoy,* the supreme court pointed out that similar conduct in a domestic-abuse situation should be treated differently from traditional *Spreigl* evidence:

> evidence of similar conduct is at least conceptually distinct from *Spreigl* evidence, which is governed by Rule 404(b). *Spreigl* evidence is oftentimes evidence of an unrelated crime against another person, which is offered for the purposes listed in Rule 404(b).... Evidence of prior domestic abuse against the alleged victim may be different from this type of *Spreigl* evidence for at least two reasons: it is evidence of prior conduct between the accused and the alleged victim and it may be offered to illuminate the history of the relationship, that is, to put the crime charged in the context of the relationship between the two.

*McCoy,* 682 N.W.2d at 159. Thus, Minn. Stat. 634.20 does not require the district court to assess the strength of the states case without the evidence of prior conduct before determining its probative value.

*Cumulative Evidence*

Appellant contends that the evidence was cumulative and that *Spreigl* evidence "should be excluded where it is merely cumulative and a subterfuge for impugning [a] defendants character or for indicating to the jury that he is a proper candidate for punishment." *State v. Billstrom,* 276 Minn. 174, 179, 149 N.W.2d 281, 284–85 (1967). We disagree. First, as previously stated, this is not *Spreigl* evidence, it is relationship evidence. Second, the evidence was not cumulative. The testimony

regarding the other incidents was brief, and the district court admitted only two incidents when the state moved for the admission of four. By limiting the number of prior incidents, the district court properly avoided admitting evidence that was unnecessary to the prosecution and that created the risk of fixating the jury on the prior incidents. *See, e.g., State v. Washington,* 693 N.W.2d 195, 203 (Minn.2005). Thus, the evidence was not cumulative.

*Jury Instructions*

■ Appellant also argues that it was improper for the district court not to instruct the jury on how to properly use the evidence immediately before or after the evidence of the prior acts was presented. But the district court did instruct the jury on how to use the evidence prior to jury deliberations. Any prejudicial effect was mitigated by the district courts cautionary instruction to the jury that the introduction of evidence regarding the two past incidents was for the limited purpose of assisting the jury in determining whether the appellant committed the acts charged in the complaint and that appellant was not being tried for any offense other than the charged offenses and could not be convicted based on any occurrences in the past. *See Waino,* 611 N.W.2d at 579 (prejudicial effect of evidence of similar prior conduct was mitigated by the district courts cautionary instruction to the jury). Thus, the district court did not error in instructing the jury on how to use the evidence along with the other jury instructions.

■ While the district court admitted the relationship evidence without balancing its probative value against its prejudicial effect, appellant is not entitled to a new trial unless "there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict[.]"

*State v. Post,* 512 N.W.2d 99, 102 n. 2 (Minn.1994). This court must determine whether there is a reasonable possibility that the verdict might have been more favorable to appellant without the evidence. *Id.* We conclude that the evidence would have been admissible had the district court conducted the balancing test because it was more probative than prejudicial. Furthermore, it is unlikely that the relationship evidence significantly affected the verdict. The testimony about the previous incidents was brief compared to the testimony about the current incident. There was also corroborating evidence that supported the current charges against appellant, including other witnesses testimony, the pictures of the victims injuries, the evidence found in the victims bed, the 911 call, and D.N.'s demeanor following the assault. Finally, the district court gave a cautionary instruction that mitigated any prejudicial effect of the relationship evidence. Although the district court erred in not explicitly weighing the probative value of the evidence against the danger of unfair prejudice, that error was not prejudicial.

## DECISION

Appellant has not demonstrated that the fact that the district court did not weigh the probative value of the evidence against the danger of unfair prejudice is reversible error. There is no record evidence establishing a reasonable possibility that the relationship evidence significantly affected the verdict; thus, appellant is not entitled to a new trial.

**Affirmed.**